UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NAPA VALLEY I, LLC; NAPA VALLEY II, LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> FEDERAL DEPOSIT INSURANCE ) <br> CORPORATION, as Receiver/Liquidator of ) <br> Silver State Bank, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No.  2:09-cv-00920-RLH-GWF <br><br> **ORDER** <br><br> **Motion to Stay Proceedings - #9** |

   This matter is before the Court on Defendant FDIC's Emergency Motion to Stay Proceedings (#9), filed on July 7, 2009. Plaintiffs Napa Valley I, LLC and Napa Valley II, LLC ("Napa Valley") filed their Opposition to the FDIC's Emergency Motion to Stay Proceedings (#11) on July 22, 2009 and the FDIC filed its Reply to Plaintiffs' Opposition to Emergency Motion to Stay Proceedings (#12) on July 23, 2009. The Court conducted a hearing in this matter on July 28, 2009.

**FACTUAL AND PROCEDURAL BACKGROUND**

   This action arises out of the collapse of an entity known as Southwest Exchange which was a qualified intermediary under 26 U.S.C. § 1031 and Chapter 645 of the Nevada Revised Statutes. The Napa Valley Plaintiffs allege that Southwest Exchange closed its doors when it was no longer able to fund the like kind exchanges for which it had agreed to act as a qualified intermediary. Plaintiffs further allege that Southwest Exchange's inability to complete exchanges occurred because its chairman and licensed intermediary, Don McGhan, improperly diverted funds that were entrusted to Southwest Exchange. Plaintiffs allege that Mr. McGhan's diversions were aided and abetted by Silver State Bank. Plaintiffs sued Southwest Exchange and others in an underlying consolidated Nevada state court action. Silver State Bank was joined as a defendant in that action by other plaintiffs.

On September 5, 2008, the State of Nevada Financial Institutions Division entered a summary order which declared Silver State Bank insolvent, revoked its charter and appointed the FDIC as its receiver/liquidator. *Opposition to Motion to Stay (#11), Exhibit "2."* On December 9, 2008 the Napa Valley Plaintiffs served the FDIC with a detailed summary of their claims against Silver State Bank for administrative consideration under 12 U.S.C. §1821. On March 26, 2009, the FDIC notified the Plaintiffs that "after thorough review" of their administrative claims, the FDIC was disallowing the claims because Plaintiffs had not proven their aiding and abetting claim against Silver State Bank. *Opposition to Motion to Stay (#11), Exhibit "3".* The FDIC also notified the Plaintiffs that pursuant to 12 U.S.C. § 1821(d)(6), they were required to file suit within 60 days of the date of the notice, otherwise the disallowance of their claims would be final. *Id.* Plaintiffs filed their complaint in this action on May 22, 2009. *Complaint (#1).* According to the return of service filed on June 1, 2009, Defendant FDIC was served on May 28, 2009. *Docket # 4.* On June 18, 2009, the parties stipulated that the FDIC would have until July 8, 2009 to file an answer or otherwise plead to the complaint. *Stipulation and Order re Extension of Time to File Responsive Pleading (#7).* After Plaintiffs refused to agree to a further extension of time for the FDIC to answer or respond to the complaint, Defendant filed its instant Emergency Motion to Stay Proceedings (#9) on July 7, 2009.

## DISCUSSION

Pursuant to 12 U.S.C. § 1821(d)(3), the FDIC, as receiver, may determine claims in any case involving the liquidation or winding up of the affairs of a closed depository institution by publishing notice and sending individual notices to known creditors of the institution. Creditors have 90 days in which to file their claims, together with proof. The receiver then has 180 days from the filing of the claim to either accept or disallow it. 12 U.S.C. § 1821(d)(5). If the receiver disallows the claim, then the creditor may, within 60 days after notification of the disallowance, request administrative review of the claim or file suit in federal district court on such claim (or continue an action commenced before the appointment of the receiver). 12 U.S.C. § 1821(d)(6)(A). If the creditor fails to pursue administrative or judicial remedies within the 60 day period, then the disallowance becomes final. 12 U.S.C. § 1821(d)(6)(B). Although it is not clear from the parties' briefs, the Court infers that following its appointment as receiver in September 2008, the FDIC served notice on Plaintiffs to file their claims in

1  accordance with § 1821(d)(3).  The FDIC thereafter disallowed Plaintiffs claims on March 26, 2009,

2  well within the 180 day period under § 1821(d)(5), and Plaintiffs filed this action on May 22, 2009

3  before expiration of the 60 day period under § 1821(d)(6)(A).

4        The FDIC argues that it is now entitled to a 90 day stay of this action pursuant to 12 U.S.C. §

5  1821(d)(12) which provides as follows:

6      (A)  In general.  After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a

7  stay for a period not to exceed---

8      (i)  45 days, in the case of any conservator; and
      (ii)  90 days, in the case of any receiver,

9

10  in any judicial action or proceeding to which such institution is or becomes a party.

11      (B)  Grant of stay by all courts required.  Upon receipt of a request by any conservator or receiver pursuant to subparagraph (A) for a stay of any

12  judicial action or proceeding in any court with jurisdiction of such action or proceeding, the court shall grant such stay as to all parties.

13

14        The majority of courts have construed subparagraph (B) as requiring that the court grant the stay

15  if the conservator or receiver has properly requested it.  The court may not deny a stay, in whole or in

16  part, because it would cause irreparable injury or because of other equitable considerations.  *See Praxis*

17  *Properties, Inc. v. Colonial Savings Bank, S.L.A., et.al.*, 947 F.2d 49, 67 (3rd Cir. 1991).

18        Plaintiffs make two arguments in opposition to the FDIC's request for a stay under §

19  1821(d)(12).  First, Plaintiffs argue that a conservator or receiver may only request a stay in a judicial

20  action or proceeding in which the insured depository institution is or becomes a party.  Because they

21  have sued only the FDIC in this action and have not joined Silver State Bank as a party, Plaintiffs argue

22  that the FDIC is not entitled to a stay under the clear and plain language of § 1821(d)(12)(A).[1]

23        Plaintiffs' argument is consistent with the language of subparagraph (A) which first references

24  "an insured depository institution" and then states that the conservator or receiver may request a stay "in

25  any judicial action or proceeding to which *such* institution is or becomes a party."  (emphasis added).

---

[1] Both parties alternatively argue that their positions are supported by the plain language of § 1821(d)(12)(A), or that the statute is ambiguous in some respect and should be interpreted in their favor based on the legislative history and the statute's purpose.

3

Where the statutory language is clear and consistent with the statutory scheme at issue, the plain language of the statute is conclusive and the judicial inquiry is at an end. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000). The interpretation that § 1821(d)(12)(A) only applies to actions in which the depository institution is a party or becomes a party is also consistent with the purpose of the statute which is to provide the receiver with breathing room immediately following its appointment in order to evaluate actions against the insured depository institution and decide what course to take. *Praxis Properties, Inc.*, 947 F.2d at 70, quoting *FDIC v. Taylor*, 727 F.Supp. 326 (S.D. Tex. 1989). This purpose is not implicated where the creditor brings suit against the receiver to recover on the claim that the receiver has disallowed after review during the administrative stay period under § 1821(d)(5).

Apparently, only one district court decision has directly addressed this issue. In *Rechler Partnership v. Resolution Trust Corp.*, 1990 WL 711357 (D.N.J. 1990), the plaintiff sued the Resolution Trust Corporation ("RTC") for declaratory relief to determine whether it had failed to disaffirm or repudiate a lease. In rejecting the RTC's assertion that it was entitled to a mandatory stay of the proceedings under § 1821(d)(12), the court stated:

> The express language of the statute provides that the RTC may request a stay in any action to which the failed institution is a party. The present action is distinguished by the fact that plaintiff's complaint is against RTC, not City Federal. It is not, therefore an action in which City Federal is or may become a party.

*Rechler*, at *5.

*Rechler* has not been cited in any subsequent decision. The few decisions which touch on the issue reach different conclusions. *Boylan v. George E. Bumpus, Jr. Construction Co.*, 144 B.R.1, 3 (Bankr. D. Mass. 1992) states, for example, that a "liquidating agent" is entitled to request a stay once it intervenes and becomes a party in an action against the financial institution. The court, however, did not analyze the language of subparagraph (A) in making this statement. By contrast, *Nassirpour v. FDIC*, 2008 WL 5412432 (C.D.Ca. 2008) at *3, appears to view the statutory language as applying when the insured depository institution becomes a party in pending litigation, but not when the receiver becomes a party by intervention or substitution as the real party in interest. Although there is little case law directly addressing the issue, this Court is persuaded that the stay provision in 12 U.S.C. §

1821(d)(12) is only applicable to actions in which the insured depository institution is or becomes a party. The stay provision in § 1821(d)(12) is not applicable in an action such as this, where only the FDIC is sued after it has administratively disallowed a claim pursuant to 12 U.S.C. § 1821(d)(5).

Plaintiffs also argue that under § 1821(d)(12), a receiver is required to request a stay within 90 days after its appointment. Because more than 90 days expired between the FDIC's appointment as Silver State Bank's receiver on September 5, 2008 and its motion to stay proceedings in this action on July 7, 2009, Plaintiffs argue that the FDIC is precluded from obtaining a stay under the statute. The FDIC argues, however, that under the plain language of subparagraph (A) it is entitled to request and obtain a 90 day stay at any time in the lawsuit.

Prior to the Third Circuit's decision in *Praxis Properties, Inc., supra*, the few district court decisions on this issue were divided. *See FDIC v. Taylor*, 727 F.Supp. 326 (S.D. Tex. 1989) (receiver must request stay within 90 days after its appointment); *Prince George Joint Venture v. Sunbelt Savings, F.S.B.*, 744 F.Supp. 133 (N.D. Tex. 1990) (holding that under plain language of statute receiver may request a 90 day stay at any point in the judicial action). In deciding this issue, *Praxis* thoroughly analyzed the language of § 1821(d)(12)(A), as well as the underlying House and Senate versions of the statute before its enactment. The court then stated:

> While we have agreed that section 1821(d)(12)(B) straightforwardly requires the court to grant a proper request for a stay, we do not read subparagraph (A) as unambiguously affording RTC carte blanche to stay a judicial proceeding at any time it feels it needs a 90-day break from the rigors of litigation. Were the language of subparagraph (A) as clear as that of subparagraph (B), we would be compelled to follow its plain meaning; unfortunately, the meaning of subparagraph (A) is not so plain as RTC suggests.

*Praxis*, 947 F.2d at 69-70.

*Praxis* stated that there are three plausible readings of the statute: (1) the statute entitles the receiver to a stay lasting 90 days at any time the receiver requests after its appointment (i.e. always); (2) the statute entitles the receiver to a stay whose outer bound is 90 days after the receiver's appointment (no matter when the receiver requests the stay); or (3) the statute requires that the receiver request a stay within 90 days after its appointment, but imposes no durational limit on the stay so long as it was timely requested. *Id.*, 947 F.2d at 70. *Praxis* concluded that the second reading of the statute is most

consistent with the legislative history and purpose of the statute.  The court, therefore, stated that if a receiver requests and receives a stay 30 days after its appointment as receiver, the duration of the stay will be 60 days.  Where the receiver does not request a stay until 90 days or more after its appointment, as occurred in *Praxis*, then it is not entitled to a statutory stay.  *Id.*, at 71.

In *Whatley v. Resolution Trust Corporation*, 32 F.3d 905, 908-09 (5th Cir. 1994), the Fifth Circuit stated that in regard to pre-receivership actions, Congress has given the receiver the option to either request a stay, and proceed administratively based on the claimant's complaint, "*or* forego the privilege of requesting a stay and thus proceed judicially.  Should the receiver choose to proceed administratively, it must request the stay within 90 days of its appointment; thereafter no stay may be sought and the judicial action is to proceed."  In support of this statement, *Whatley* cited *Praxis* and stated that "[w]e agree with the analysis of our colleagues on the Third Circuit that the privilege to request a stay must be restricted to the first 90 days after the appointment to prevent abuse." *Whatley*, 32 F.3d at 909 n. 18.

No other circuit, including the Ninth, has addressed this issue.  A few lower court decisions outside the Third and Fifth Circuits have disagreed with *Praxis*.  In *Boylan v. George E. Bumpus, Jr. Construction Co.*, 144 B.R.1 (Bankr. D. Mass. 1992), the court disagreed with *Praxis* on the ground that its interpretation of the statute "would render superfluous that section of the statute which allows a liquidator to request a stay when it 'becomes a party'" *Bumpus*, 144 B.R. at 3.  This interpretation is, however, contrary to the plain language of the statute as discussed above.  The court in *Bumpus* also stated that an interpretation of the statute that would prevent the "liquidating agent" from requesting a stay in an action that is commenced more than 90 days after its appointment is not a fair reading of the words of the statute.

The FDIC also cites *Wachovia Bank, N.A. v. Vorce*, 2007 WL 3471229 (W.D. Mich. 2007), in support of its motion.  The receiver in that case filed a motion to stay an action against the insured depository institution approximately one month after it was appointed as receiver. Consistent with the Third Circuit's initial holding in *Praxis*, the court held that the granting of the stay was mandatory and could not be denied on the discretionary basis that the receiver had not demonstrated a need for the stay.  *Id.*, at *3.  In granting the stay, however, the court also held that the receiver was entitled to a 90 day

1 stay, thereby implicitly rejecting the statement in *Praxis* that a receiver is only entitled to a stay for that
2 portion of the 90 days that remains after its appointment as receiver.
3    In contrast to *Bumpus* and *Wachovia Bank, N.A. v. Vorce*, the court in *Nassirpour v. FDIC*,
4 2008 WL 5412432 (C.D.Cal. 2008) followed *Praxis* and *Whatley* in holding that the FDIC was not
5 entitled to a stay under § 1821(d)(12) where it failed to move for a stay within 90 days after its
6 appointment. In so holding, the court stated:

> The 90-day stay provision is designed for the benefit of the FDIC, not the creditor, and it serves a valuable purpose for the FDIC. When the FDIC takes over a failed institution, it also inherits that institution's pending litigation. Because the FDIC is initially unaware of its status with regard to pending litigation, the 90-day stay allows it time to determine its status as defendant. *See Brady Dev. Co. Inc., v. Resolution Trust Corp.*, 14 F.3d 998, 1004 (4th Cir. 1994). Following that determination, the FDIC can initiate the administrative procedures which require it to publish notice to creditors and mandates that creditors present claims to it pursuant to 20 [sic] U.S.C. § 1821(d)(3)(B). *Id.*

13    *Nassirpour* further stated that were the court to follow the FDIC's interpretation of the statute, it
14 could litigate a case for years and then request a stay for 90 days whenever it pleased. The court
15 reiterated that such an interpretation would be contrary to the purpose of the stay provision.
16    In it Reply (#12), the FDIC also discusses, and has attached as exhibits, the parties' motion
17 briefs and the district court's January 9, 2009 order in *Rosequist v. Washington Mutual Bank, FA*,
18 United States District Court for the District of Nevada, Case No.: 2:08-cv-01336-KJD-RJJ. Besides the
19 fact that the order was issued by a district judge of this district, the case is noteworthy because the law
20 firm that represents the Napa Valley Plaintiffs in this case represented the FDIC in *Rosequist*. In that
21 case, counsel made exactly the opposite argument regarding the interpretation of § 1821(d)(12) that it
22 makes on behalf of the Plaintiffs in this case. That fact notwithstanding, and with due respect to the
23 court's order granting a stay, this Court is not persuaded by *Rosequist*.
24    First, the FDIC's request for stay in *Rosequist* was perfunctory and cited no case law
25 interpreting 12 U.S.C. § 1821(d)(12). Second, in opposing the request for stay, the plaintiff relied
26 solely on *Nation v. Resolution Trust Corp.*, 791 F.Supp. 1152(N.D.Tex. 1992). The plaintiff did not
27 cite *Praxis* or *Whatley*. Third, in its reply brief, the FDIC noted that *Nation v. Resolution Trust Corp.*
28 "relies exclusively in [sic] *Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49 (3d Cir.

1991)." *Reply (#12)*, pages 2-3. The FDIC then asserted: "Every court that has considered *Praxis* has rejected its holding." *Id.*, page 3. This latter statement was clearly incorrect and ignored the Fifth Circuit's decision in *Whatley*.[2] Finally, the brief order granting the FDIC's request for stay did not expressly discuss the legal authorities cited by the parties or analyze the statute in light of those authorities.

The decisions of the Third and Fifth Circuits support Plaintiffs' argument that a receiver must request a stay under 12 U.S.C. § 1821(d)(12) within 90 days of its appointment. No other circuit has ruled to the contrary. While this Court is not bound by *Praxis* and *Whatley*, they provide the better interpretation of the statute than the district and bankruptcy court decisions which hold otherwise. This view is buttressed by the recent decision of the district court in *Nassirpour v. FDIC* which follows *Praxis* and *Whatley*.

## CONCLUSION

The Court therefore concludes that the FDIC is not entitled to a stay because 12 U.S.C. § 1821(d)(12) is inapplicable to this type of action and/or because the FDIC did not (and obviously could not) request a stay of this action within 90 days after its appointment as receiver. Accordingly,

**IT IS HEREBY ORDERED** that the FDIC's Emergency Motion to Stay Proceedings (#9) is **denied.**

**IT IS FURTHER ORDERED** that the Defendant shall file its answer or otherwise respond to the Complaint on or before 10 days from the date of this Order.

DATED this 30th day of July, 2009.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

---

[2] The decision in *Nassirpour v. FDIC*, 2008 WL 5412432 (C.D.Cal. 2008), was issued after the briefs in *Rosequist* were filed.